FRANK J. NOLAN

versus

OWEN W. BROWN, et al.

**8200**

NO. 8200

COURT OF APPEAL

PARISH OF ORLEANS

WILLIAM A. BELL, JUDGE:

Court of Appeal.
PARISH OF ORLEANS
FILED FEB 3/22

**8200**

319

BY: WILLIAM K. BELL, JUDGE.

Louis M. White, appellant herein, is one of two defendants against whom judgment of the Court below was rendered in favor of plaintiff, holder and owner of nine certain promissory notes described in plaintiff's petition. There is no dispute as to the facts of this case, which are briefly, as follows:

> The notes sued upon, and of which the plaintiff, Frank J. Nolan is holder and owner for value, were all dated at New Orleans, June 18, 1919, each for the sum of $31.83, with 8% interest thereon from maturity until paid. The said notes being made by Owen W. Brown, to his own order and by himself indorsed, all of said notes being also indorsed by Louis M. White, the said notes maturing respectively October 15, November 15, December 15, 1919, and January 15, February 15, April 15, May 15, and June 15, 1920.

To the suit herein filed on these notes, White pleads discharge from his obligations on the grounds that he had no notice of dishonor. It appears that Nolan originally held another series of nine notes each for $40.00, also given by Brown, the maker, and endorsed by White as surety. All of this series of notes having fallen due and being about to become prescribed in the order of their maturity, were placed in the hands of Nolan, attorney for collection on or about October 13, 1919. The attorney wrote to the maker and endorser informing both of them that the notes were nearing prescription, and unless settlement was made would be sued upon. This demand brought Brown and White to the attorney's office on the second or third day after written notice had been received by them, and both of these parties to the old series then and there signed and endorsed an entirely new series of notes as above described and upon which this suit is predicated. Attorney Wolff's testimony shows that both Brown and White handed him the said notes for account of Nolan, and at the same time handed Wolff a memorandum slip in the handwriting of Nolan, whom they had just seen, reading as follows:

> "Nine notes - $40.00 each dated June 19, 1914.(360) Interest on $360.00 from June 19, 1915 to June 19, 1920 - 5 years at 4% per annum. Principal and interest cash to be paid. Balance due to be settled by 12 new notes of $31.83 each dated June 19/19 payable monthly."

As Wolff explains in his testimony, his client had figured that the old nine notes at $40.00 each amounted to $360.00 with interest due up to a certain period, making a total of $382.00, and that he divided the total of $382.00 into twelve notes, the series now sued upon which was signed and endorsed in his presence, he, Wolff, then giving all of the old notes, nine in number, to Brown and Nolan. Wolff further testifies that three or four of the present series of notes sued upon were already past due at the time they were given by Brown and White to Wolff, and that these parties agreed to take up said notes within the next few days. This agreement not being kept, Wolff wrote to both Brown and White on December 22, 1919, insisting that the terms of the compromise resulting in the issuance of these new series of notes should be complied with and that all of said notes of the series then due should be immediately paid. Receiving no reply from either party two other letters of demand were made by Wolff on January 21, 1920 and on October 8, 1920. The memorandum slip and five copies of letters written by Wolff to Louis M. White appear from the evidence to have been offered at the trial but not being in the transcript brought to this Court, and Wolff having died since the appeal herein taken, on motion of counsel now representing the plaintiff and appellee and on consent stated in open court by counsel for White, appellant, these documents have been filed and made part of the transcript by order of this Court.

It does not appear from the evidence that the series of notes sued upon were ever protested or notice of dishonor thereof given to the endorser, White. It is not denied that White, endorsed all of the nine notes sued upon, nor that he was a party to the agreement made in Wolff's office when the original series was substituted by the new series of notes referred to.

The facts of this case being clear, the only question involved in one of law, that is, whether or not the endorser, Louis M. White, is liable in solido with the maker. To the

original petition there was an exception of no cause of action filed by White, which was at first maintained by the Court.

Plaintiff applied for rehearing which was granted, and he was also allowed to file an amended and supplemental petition. To both the petition and supplemental petition, the defendant, White, again urged the same exception of no cause of action, which exception seems to have been referred to the merits of the case and on final hearing both exceptions were overruled, and judgment for plaintiff as prayed for was rendered. Defendant pleads a discharge from liability upon the ground that no notice of dishonor was served upon him, as required under Sec. 70 and 89 of the Negotiable Instruments Law, Act NO. 64 of 1904. The following sections of the Negotiable Instruments Act should be noted, to wit:

> "Sec. 109. Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or IMPLIED.
>
> "Sec. 114. Notice of dishonor is not required to be given to an indorser in either of the following cases:-
>
> 1. Where the drawee is a fictitious person or a person not having capacity to contract, and the indorser was aware of the fact at the time he indorsed the instrument;
>
> 2. Where the indorser is the person to whom the instrument is presented for payment;
>
> 3. WHERE THE INSTRUMENT WAS MADE OR ACCEPTED FOR HIS ACCOMMODATION."

The learned judge of the Lower Court has, in our opinion, taken a correct view of the law applicable to this case and nothing need be added to his opinion forming part of this record. There can be no doubt that the second series of notes given herein were intended to avoid a threatened lawsuit upon a former or original series of notes, and that both the maker and the endorser were in this respect peculiarly

accommodated by Nolan. The holder of the notes here sued upon was in no-manner obligated to notify White, the endorser, of the dishonor of said notes, for the reason that the memorandum slip offered in evidence, as well as the actual, personal participation of the endorser in the compromise plan agreed to by him in the office of Nolan's attorney, show plainly that whatever might have been the endorser's liability under the original series of notes, the circumstances of his subsequent liability was clearly fixed upon the second series of notes, wherein he accepted the special accommodation granted him by the holder of both series of notes, and whereby the much desired avoidance of litigation against both parties to the notes was clearly solicited and obtained by them to their advantage. It is also clearly to be noted, as heretofore stated, that every inference justifies the Lower Court's conclusion that the endorser obtained accommodation on the second series of notes, as drawn, from the fact that the record shows that when the second series of notes were endorsed by White in the attorney's office, several of them were then past due and already dis-honored when he endorsed them. It is not to be presumed that he intended any different conclusion to be drawn from his actions in regard to one or more notes in the series sued upon than upon all other notes in the series. Had White merely endorsed the second series of notes at Brown's solicitation without knowledge that Nolan had threatened suit on the first series, the situation would have been quite different, and there can be no doubt from White's own testimony and from all other evidence in the case, as well as from the copies of the attorney's letters personally addressed to him, that he knew all of the circumstances which induced Nolan to take the second series in lieu of the first series of notes, and that he, White, personally participated in all of the transactions which enabled him as endorser to avoid the threatened liti-gation on the first series.

It is urged in defendant's brief that it was error of law for the Trial Court to allow the filing of a supplemental petition after judgment rendered on the main petition. There might be some merit in this contention except for the fact that the record shows that after a re-hearing granted, counsel for defendant accepted service to the amended and supplemented petition four days before same was presented to the Court, and leave granted by the Court for the filing thereof, thus showing acquiescence in the proposed method of procedure.

We find no error in the ruling of the Lower Court.

Judgment affirmed.